Filed 9/24/13  P. v. Qualls CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BRYAN DAVID QUALLS, <br><br> Defendant and Appellant. | F062679 <br><br> (Super. Ct. No. F08903851) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Rosendo Peña, Judge, and Brant K. Bramer, Commissioner.[†]

Roger Nuttall for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Detjen, J., and Franson, J.

[†]     Judge Peña presided over appellant's change of plea and placed him on probation. Commissioner Bramer sentenced appellant to prison after he was found in violation of probation.

## INTRODUCTION

On September 18, 2008, appellant, Bryan Roger Qualls, pled guilty to one count of elder abuse (Pen. Code, § 368, subd. (b)(1))[1] and admitted an enhancement for committing his offense on someone 70 years of age or older (§ 368, subd. (b)(3)(B)). A psychiatric evaluation was made of appellant prior to sentencing pursuant to Evidence Code section 460. On February 27, 2009, the trial court suspended imposition of sentence for five years and placed appellant on probation upon various terms and conditions, including that he spend 365 days in jail.[2]

On March 11, 2011, appellant waived his right to a contested hearing and admitted that he violated the terms and conditions of his probation. On April 6, 2011, the trial court denied appellant's request for reinstatement of probation and sentenced him to prison for nine years and granted custody credits of 736 days. The court denied appellant's request for a certificate of probable cause.

Appellant contends the prosecutor misled the trial court concerning the sentencing option of having appellant waive his right to custody credits in exchange for a one-year commitment to county jail. Appellant argues the court should have considered this sentencing option. Appellant also contends his trial counsel was ineffective for failing to argue this sentencing option.[3] We disagree with these contentions and affirm the judgment.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] The court noted its concerns over appellant's use of drugs and alcohol as well as appellant's ability to take the medication he needed to avoid going into a manic state. The court informed appellant that he was being given the opportunity for probation "only once." Among appellant's conditions of probation were that he obey all laws, report to his probation officer upon his release from custody, maintain contact with his probation officer, not use alcohol or drugs without a lawful prescription, and submit to substance abuse testing.

[3] Appellant initially contends, and respondent concedes, that he does not need a certificate of probable cause to raise a sentencing issue. We agree with the parties. The

# FACTS AND PROCEEDINGS

## *Circumstances of Offense*

On February 21, 2008, appellant took his 88-year-old grandmother out of a rehabilitation hospital to his mother's residence and reportedly left her on the back patio. Appellant returned 15 to 20 minutes later and found his grandmother floating face down in the swimming pool. She was declared dead by drowning. Police found a bruise on the victim. Investigators also learned that appellant chuckled during a telephone call to the 911 operator.

The victim suffered from advanced dementia, anxiety, and a variety of age-related ailments. She was not able to propel herself in her wheelchair. Appellant told investigators that he was inside the house with the victim. Appellant gave the victim a glass of wine and left her alone inside the house for 15 minutes to go to a nearby fruit stand. Appellant found the victim in the pool, took her out, and unsuccessfully tried to revive her before calling 911. Appellant told investigators that the victim liked to go outside. Appellant made statements to family members suggesting that he had acted intentionally because the victim was a burden on his mother and it was a mercy killing.

## *Initial Psychological Evaluation*

Appellant was diagnosed with bipolar disorder and was seeing a psychiatrist who prescribed medication. Prior to sentencing, appellant was evaluated by Dr. Harold

---

requirement of a certificate of probable cause does not apply where the defendant raises sentencing issues unrelated to integral aspects of the terms of the plea agreement. (*People v. Johnson* (2009) 47 Cal.4th 668, 678.)

The terms of the plea agreement did not affect appellant's sentence unless the court *denied* probation, in which case appellant would receive a prison term of four years. Here, Judge Peña initially *granted* probation and suspended imposition of sentence. Appellant was not sentenced to a prison term until after Commissioner Bramer found him in violation of the conditions of his probation and denied reinstatement of probation. Appellant's prison sentence is an appealable order of the trial court that does not require a certificate of probable cause.

Seymour pursuant to Evidence Code section 460. Dr. Seymour reported that appellant's only prior criminal history involved incidents when he was found sleeping overnight in a state park and when he was contacted by an officer and left when his dog tried to run away. Appellant completed his education through a master's degree.

Dr. Seymour's evaluation of appellant found him to be naïve. Dr. Seymour did not find appellant to be a malingerer. Appellant showed signs of mania and depression. Dr. Seymour noted that appellant did not acknowledge having certain experiences such as hallucinations except for one time. Dr. Seymour had difficulty finding positive correlations with any type of mental disorder and noted that the Personality Assessment Instrument test given to appellant showed no resemblance to individuals suffering from bipolar disorder.

Dr. Seymour found that appellant suffered from alcohol and cannabis abuse, as well as "Bipolar Disorder, Type I, manic type, by history." Appellant also showed signs of schizotypal personality traits. Dr. Seymour concluded appellant was not a threat to himself or others, was fragile, and in need of treatment. Dr. Seymour concurred with appellant's psychiatrist who believed appellant required intensive therapy twice a week. Dr. Seymour further noted that appellant needed to remain free of drugs and alcohol.

*Violation of Probation*

After serving time in custody, appellant met with his probation officer on October 22, 2009. Appellant was given his probation instructions and a mental health referral to contact the Fresno County Mental Health Office by November 6, 2009. Appellant met with his probation officer on January 7, 2010, and stated he was attending monthly therapy.

On August 20, 2010, appellant reported to his probation officer that he missed an appointment on August 17, 2010, because his vehicle had been stolen three days earlier in San Francisco. When the probation officer asked appellant if he had recently used any illicit drugs, appellant replied that he had been offered a cookie containing marijuana.

4.

Appellant said he had smoked marijuana about a month earlier because he was out of medication. Appellant was given a drug testing schedule and told to test between August 20, 2010, and October 26, 2010. Appellant initially refused to test, but 20 minutes later appellant submitted a negative urine test. Thereafter, appellant stopped testing.

On September 17, 2010, the probation officer could not find appellant at home at his address of record. The probation officer sent appellant a written notice to meet on October 1, 2010. Appellant failed to appear for the appointment. The probation officer obtained a bench warrant in late October 2010 and appellant was arrested on December 2, 2010, for being out of contact with his probation officer. Appellant had also failed to drug test during this interval. The probation officer recommended that probation not be reinstated and that appellant be committed to prison for two years for elder abuse with a consecutive term of seven years for the elder abuse enhancement.

### Second Psychological Evaluation

Dr. Seymour again evaluated appellant on March 15, 2011. Appellant admitted he had used marijuana. Appellant told Dr. Seymour that he had entered a manic phase in which he became obsessed with solving mathematical equations and was in what he called a messianic mode of functioning. This led appellant to miss his drug testing appointments and he was taken into custody in December 2010.

Dr. Seymour noted appellant had a diagnosis for Bipolar Disorder, Type 1. Appellant had been prescribed Abilify by his psychiatrist and, more recently, Risperdal. Appellant had a history of inconsistent compliance with taking his prescribed medication. Appellant did not consistently take Risperdal because it made him tired and would only take it if he began feeling manic. Although appellant's psychiatrist had recommended monthly psychiatric medication management and psychotherapy twice a week, and appellant had been referred to the Fresno County Mental Health Office, appellant did not pursue that referral. Appellant did continue to see his psychiatrist, although he failed to obtain psychotherapy.

Appellant was not currently receiving his prescribed medication and stated that only Paxil is prescribed in the jail. Appellant was experiencing cyclical mood shifts, but his baseline mood was depressed. Appellant reported that he did better during his time in jail than when he was in a mental health pod, which he found traumatizing. Appellant denied becoming psychotic in jail. Dr. Seymour noted that marijuana use can exacerbate bipolar symptoms. Dr. Seymour's diagnostic impression was that appellant suffered from Bipolar Disorder, Type I, manic, with moderate severity and a history of psychotic symptoms. Dr. Seymour further found appellant suffered from cannabis abuse.

Dr. Seymour concluded that appellant was showing better insight into his bipolar diagnosis than when he previously saw Dr. Seymour and had a better understanding of the need for treatment compliance. In the past, appellant had used his intelligence to rationalize his treatment choices, but this had led to the wrong conclusion and resulted in his use of marijuana and failure to comply with probation. Dr. Seymour did not believe appellant had a criminal orientation and his failure to comply with probation conditions was not a function of disrespect or disregard of probation requirements. Dr. Seymour attributed appellant's choices as a result of his disordered thinking, which is a feature of his illness and lack of adequate treatment. Dr. Seymour recommended that appellant be returned on probation and placed on a Comprehensive Alcohol Program (CAP). In the CAP, appellant would be placed in a 30-day residential treatment program with aftercare treatment.

### Sentencing Hearing

At the sentencing hearing on April 6, 2011, the court initially stated it had reviewed documentation from Alternative Sentencing Choices. Defense counsel argued that appellant could be placed in the New Life Community Services treatment facility and

the court could reinstate appellant's probation. Defense counsel explained that appellant's parents were willing to take appellant to treatment and to pay for the cost.[4]

The prosecutor noted when Judge Peña placed appellant on probation, he warned appellant that he would only get one chance for probation. The prosecutor stated appellant was noncompliant on probation and would continue to remain noncompliant should probation be reinstated. The prosecutor argued there was no one who could promise that appellant would take his medications and obtain treatment because appellant had previously failed to take medications and participate in treatment.

The prosecutor further argued that Judge Peña placed appellant in county jail for 365 days with the contemplation he would remain incarcerated the entire time, and "there would be no local alternative if he messed up." The prosecutor stated, "[s]o I'm certainly not in any way, shape or form comfortable with any time waivers or that type of stuff." The prosecutor referred to three attempts made by appellant for modification of his probation during his incarceration in jail, but Judge Peña denied those requests. The prosecutor argued there was no local alternative available to appellant because he had served as much local time as he could. The prosecutor believed the "only proper thing for the court to do is to sentence [appellant] to prison."

The prosecutor dismissed the psychological reports as irrelevant to the issue of proper punishment and asked the court to sentence appellant to prison because he was noncompliant, absconded from probation, and did not take drug tests. The court noted that appellant had "a ton" of time credits and asked the prosecutor about a local alternative. The prosecutor again stated there was none.

The court noted that appellant was not taking his medication, running out of medication and using marijuana, and failing to drug test. The court called this a

---

**4** According to information in the Alternative Sentencing Report, the New Life Community Services treatment facility is an inpatient program.

conscious decision by appellant because he knew he was going to test dirty. The court noted it had no doubt appellant suffered from a mental illness, and he had been given every opportunity to deal with those issues but decided not to do what he was supposed to do. The court noted this was a very serious case and appellant had been given the opportunity to deal with his issues and failed to do so.

Defense counsel argued that appellant now accepts his mental illness, understands the consequences, and is now doing better mentally. Defense counsel argued appellant was a bright person with a mental illness. Counsel asked the court to return appellant "to [p]robation, to waive his time credits, have those hang over his head and give him this year or so of treatment, and give his family the opportunity to … monitor him."

The prosecutor responded that appellant already had a prison sentence hanging over his head and failed to comply with the terms of probation. The prosecutor was further concerned with placing appellant on family monitoring because it placed a burden on appellant's family to contact probation if appellant was in noncompliance with his conditions of probation.

The court stated it could not make appellant's family his probation officers and noted that appellant's problem was he "violated probation here in such a way that I don't believe that I can put you back on probation." The court further stated that appellant continued to do things even when he knew they were wrong. The court observed appellant was doing well in jail for four months and the court could not ignore that fact. The court found appellant was not a suitable candidate for further grants of probation and sentenced him to prison.

## DISCUSSION

### Prosecutor's Sentencing Argument

Appellant contends the prosecutor misled the trial court by arguing that appellant was not entitled to local time, there were no local sentencing alternatives for appellant, and the only option for the trial court was to sentence appellant to prison. Appellant's

argument is based on *People v. Johnson* (1978) 82 Cal.App.3d 183, 185-188 (*Johnson*), which held that where a defendant has already spent time in county jail and thereafter commits a violation of probation, the trial court is not faced with only two choices: (1) ignoring the probation violation; or, (2) a state prison sentence. The court may choose the third alternative of permitting the defendant to waive any custody credits and commit the defendant to county jail again for up to a year. (*Ibid*.) We reject this contention.

We begin our analysis with the general rule that the trial court is presumed to have been aware of and followed the applicable law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496-497.) Under Evidence Code section 664, there is also a legal presumption that official duties are regularly performed.

Appellant is correct that the prosecutor argued there was no local alternative to a state prison sentence. Appellant has taken the prosecutor's argument out of context. The prosecutor argued that Judge Peña had placed appellant in county jail for 365 days with the contemplation he would remain incarcerated the entire time, and "there would be no local alternative if he messed up." The prosecutor further stated, "[s]o *I'm certainly not in any way, shape or form comfortable with any time waivers or that type of stuff*." (Emphasis added.) Time waivers are used in the context of the procedure set forth in the *Johnson* case. During argument, defense counsel did request that the trial court permit appellant the opportunity to waive his custody credits. The prosecutor did not mislead the trial court on sentencing alternatives and, in effect, discussed the *Johnson* procedure in his argument as a legal alternative that should be rejected.

Furthermore, read within the context of his entire argument, the prosecutor did not want appellant placed in *any* local alternative to prison because appellant had failed to obtain proper treatment for his mental illness, failed to drug test, failed to regularly meet with his probation officer, and failed to participate in psychotherapy as recommended by his own evaluating psychologist, Dr. Seymour. The prosecutor argued that the only

proper sentence for appellant was a state prison sentence. In so arguing, the prosecutor was not misleading the trial court but was asking the court to reject local sentencing alternatives, including the *Johnson* procedure that the prosecutor referenced in his opening argument to the court.

Appellant argues that the trial court was still misled as to local alternatives for sentencing because when the court inquired of the prosecutor, the prosecutor replied that there were no local sentencing alternatives. Again, as we read the record, it is clear that not only the prosecutor, but the trial court was concerned about the conscious decisions appellant made to violate his probation. In this context, the trial court concluded that local sentencing alternatives were not adequate in appellant's case because appellant failed to comply with the terms of his probation, including receiving treatment for his mental health issues.

We find that on the record, read as a whole, the prosecutor, defense counsel, and the trial court were aware of the *Johnson* procedure as a sentencing alternative. We further find that given appellant's failure to comply with the conditions of probation and the seriousness of the offense, the trial court would not have considered any sentencing alternative to appellant's commitment in state prison.

### Alleged Ineffectiveness of Trial Counsel

Appellant argues that his trial counsel was ineffective for failing to rebut the prosecutor's argument that there was no local alternative to a prison sentence. We do not find this argument persuasive.

The defendant has the burden of proving ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, the defendant must establish not only deficient performance, which is performance below an objective standard of reasonableness, but also prejudice. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Tactical errors are generally not deemed reversible. Counsel's decisionmaking is

10.

evaluated in the context of the available facts. To the extent the record fails to disclose why counsel acted or failed to act in the manner challenged, appellate courts will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or, unless there simply could be no satisfactory explanation. Prejudice must be affirmatively proved. The record must affirmatively demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

We do not find that defense counsel's request for reinstatement of probation falls below an objective standard of reasonableness. It appears to be a reasonable tactical choice within normal professional practice.[5] Indeed, it appears that all of the parties were aware of the *Johnson* procedure as a sentencing alternative, even if it was not so denominated by the prosecutor or defense counsel during their arguments at the sentencing hearing. Under the facts of this case, we do not view defense counsel's failure to argue for the *Johnson* procedure to fall below the objective standard of reasonable professional norms. This is especially the case where defense counsel proposed a local placement alternative to a prison sentence, discussed the possibility that appellant waive his custody credits, and the evaluating psychologist recommended a local CAP program in lieu of a state prison sentence.

## DISPOSITION

The judgment is affirmed.

---

[5]     Even if counsel's tactics during the hearing could be categorized as a tactical error, such errors are not usually deemed reversible.